## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

### CASE NO: 3:24-cv-00128-MCR-HTC

**JENNIFER PITTS,**
individually and on behalf of all
others similarly situated,                                          **CLASS ACTION**

       Plaintiff,

v.

**BISHOP GOLD GROUP, LLC,**

       Defendant.

_____/

### PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR APPROVAL OF ATTORNEYS' FEES AND COSTS

Plaintiff Jennifer Pitts, on behalf of herself and a Class of similarly situated persons, and with the consent of Defendant Bishop Gold, LLC, respectfully requests the entry of an order granting final approval of the class action settlement set forth in the Parties' Settlement Agreement, [DE 40-1], and awarding attorney's fees and costs as set forth below, and in support states as follows:

### I.      INTRODUCTION

Plaintiff and Defendant agreed to resolve this matter for the benefit of a nationwide class of similarly situated individuals. Specifically, the parties agreed

1

that Defendant would create a non-reversionary settlement fund in the amount of $2,000,000 to compensate Class Members for their claims under the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitations Act ("FTSA"). This Court preliminarily approved the Settlement on August 7, 2025, [DE 41], and the court-appointed claims administrator, Simpluris, disseminated court-approved settlement class notice on September 24, 2025, with a second round of e-mail notice to be sent on October 1, 2025.[1] *See* Declaration of Meagan Brunner, attached as **Exhibit 1**, ¶¶11-12.

Pursuant to the Court's Order, the deadline for the submission of claims is December 5, 2025. Moreover, as extended by the parties to account for the slight delay in providing notice, the deadline for submitting opt-outs and objections is November 13, 2025. This will permit Class Members time to review the Settlement and Class Counsel's request for fees and costs outlined in this Motion, and voice any concerns they may have prior to the final approval hearing on November 20, 2025. Accordingly, Class Counsel will provide the Court with up-to-date claim and opt-out information, as well as notice and administration costs incurred, via the

---

[1] Defendant encountered a delay in producing Class Member contact information to Simpluris, and the parties therefore agreed to extend the opt-out and objection period by an additional 23 days to account for the delay. The notice documents sent to the Class Members reflect the extended deadline of November 13, 2025 for opting out or objecting to the Settlement, which is after the filing of this Motion and in advance of the final approval hearing. Accordingly, there is no prejudice to the Class Members.

submission of a declaration from the Claims Administrator prior to the final approval hearing scheduled for November 20, 2025.

## II.    SUMMARY OF THE SETTLEMENT

### A. <u>The Settlement Class</u>

The Settlement establishes the following Settlement Class:

> **All persons in the United States who, during the four years prior to the filing of this action, (1) received one or more text messages from Defendant; (2) after requesting to not receive text messages from Defendant by responding with a "stop" or "unsubscribe" request; and (3) who did not re-opt in to receive text messages prior to receipt of the text message(s).**

Settlement Agreement at I.JJ.

To compensate the Class Members, Defendant created a non-reversionary settlement fund of $2,000,000. Paid from the settlement fund will be compensation to the Class Members, notice and administration costs, and Court approved fees and costs. Each Class Member who submits a claim by the Court's deadline is entitled to a *pro rata* share of the non-reversionary settlement fund after deducting administration costs, and Court approved fees and costs.

Pursuant to the Court's preliminary approval order, Simpluris provided notice directly to the Class Members, together with instructions on how to submit a claim electronically via the Settlement Website. Any Class Member who wished to exclude himself or herself from the Settlement was able to submit a request for

3

exclusion. Likewise, any Class Member who wished to object to the Settlement was instructed on how to submit the objection.

Upon this Court's entry of a final judgment, Plaintiff and the Class Members will release and forever discharge their TCPA and FTSA claims they have against Defendant.

## B. **Settlement Administration**

Simpluris delivered notice of the Settlement to the Class Members as follows:

*Direct E-Mail and Mail Notice*: Simpluris will send two rounds of e-mail notice to the Class Members where available. The e-mail notices include instructions on how to submit a claim on the Settlement Website. The postcard notice includes the same instructions, as well a detachable claim form. Simpluris performed a reverse lookup to locate Class Members. *See* **Exhibit 1**, ¶¶10-12. Simpluris was able to send notice to 93% of the Class, which well-above the court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3] *Id*. ¶13.

*Settlement Website*: Simpluris established a dedicated settlement website—www.BishopTCPASettlement.com—which includes information pertinent to Class Members as well as answers to frequently asked questions, and allows Class Members to submit their claims. See *id*., ¶13.

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[3] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d ed. 2010).

4

*Toll-Free Hotline*: Simpluris established a toll-free telephone number for Class Members to obtain information about the settlement. *See id.*, ¶15.

*Class Action Fairness Act Notice*: United served the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. No government official, state or federal, objected to the settlement. *See id.*, ¶5. Only one state Attorney General made a follow-up request for additional information and had no follow-up questions. *Id.* ¶6.

### III.    ARGUMENT

### A. <u>The Settlement is Fair, Reasonable, and Adequate</u>

Under Eleventh Circuit precedent, the following six factors are relevant in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e) mandates consideration of several additional factors, including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the Settlement is

fundamentally fair, reasonable, and adequate.

### 1. *The settlement was the result of arm's-length negotiations at a mediation conducted by Magistrate Judge Cannon*

The parties reached an agreement to resolve this matter under the guidance of Magistrate Judge Cannon, who held an in-person mediation on April 7, 2025. The settlement is therefore not a product of collusion but was the result of arm's-length settlement negotiations. *See James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016)("No indication appears that the settlement resulted from collusion.").

### 2. *The complexity, expense and likely duration of the litigation favors approval of the settlement*

Notably, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources").

Here, absent settlement, additional work would have included briefing on Plaintiff's motion for class certification, competing motions for summary judgment, and a likely appeal on one or more issues. Given the considerable work already

performed in this matter—and the work left to be performed absent settlement, including any appeals—settlement approval here is warranted. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### 3. *Plaintiff and Class Counsel were sufficiently informed to make a reasoned judgment concerning the settlement*

The next factor for consideration is "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). However, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties engaged in significant discovery, including written discovery and document production, subpoenas to non-parties, and three (3) corporate representative depositions of Defendant. Additionally, as ordered by the Court at the settlement conference, Plaintiff conducted discovery to confirm the total number of Class Members. Plaintiff's efforts over the course of several months consisted of

issuing subpoenas to the various vendors utilized to transmit the text messages at issue and obtaining transmission logs for inbound and outbound text messages transmitted to potential members of the class. That data was then provided to Plaintiff's expert for analysis to determine the number of potential statutory violations and Class Members.

Accordingly, the settlement was achieved and submitted to the Court for approval only after the parties were fully informed regarding the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### 4. *The probability of success on the merits and the range of possible recovery support approval of the Settlement*

Courts should also consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). However, that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re*

*Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350. This is because a settlement must be evaluated in light of the attendant risks with litigation. *Id.* These factors also weigh in favor of the settlement here.

While Plaintiff believes strongly in her claims, by any objective assessment she faced hurdles to obtaining class-wide relief. Despite these obstacles, Plaintiff negotiated a settlement that compares favorably to other TCPA class action settlements. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101).

### 5. *The opinions of Plaintiff and Class Counsel*

"In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel." *In re*

*Domestic Air Transp.*, 148 F.R.D. at 312-13. Class Counsel, who are experienced in TCPA class litigation, respectfully submit that the Settlement is fair, reasonable, adequate, and in the best interests of Class Members. *See* Hiraldo Decl., [DE 40-3], ¶¶9-16; *see also Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

### 6. *The reaction of the Class Members*

As outlined above, the parties agreed to accept opt-outs and objections through an extended deadline to account for the slight delay in providing notice to the Class Members. Additionally, this Motion was filed prior to the opt-out/objection deadline to permit Class Members to voice any concerns regarding the Settlement and/or Class Counsel's request for fees and costs. Prior to the final approval hearing, Class Counsel will submit a declaration outlining the opt-outs and objections, if any, received from the Class Members.

### B. The Settlement Treats all Class Members Equitably

Under Rule 23(e)(2)(D), this Court must confirm that the Settlement treats all Class Members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether

10

the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). Here, Settlement provides that each participating Class Member will receive an equal portion of the Settlement fund.

### C. The Notice Plan Satisfied Due Process Requirements

This Court previously found that Plaintiff's proposed notice plan met the requirements of Rule 23(c)(2)(B) and due process, and constitutes the best notice practicable under the circumstances. Order, [DE 41], at 15. Simpluris executed the approved notice plan. As indicated above, Plaintiff will advise the Court of the total number of claims that have been received from Class Members prior to the final approval hearing. The percentage of claims received, even if low, support final approval of the settlement and a finding that notice was sufficient. *See, e.g., Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486-JCS, 2018 WL 8949777, at *4 (N.D. Cal. Oct. 15, 2018) (collecting cases approving settlements with claims rates between 2% and 4%); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *accord Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

### D. Class Counsel's Request for Attorneys' Fees Equal to One-Third of the Settlement Fund is Fair, Reasonable, and Justified

The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eleventh Circuit agrees: "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (citing Fed. R. Civ. P. 23(e)).

Accordingly, "common fund fee awards should be computed as a fair percentage of the fund." *Id*. at 774 (citing *Blum v. Stenson*, 465 U.S. 886, 900 (1984)); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 689 (M.D. Ala. 1988) ("Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund bases."). With reference not only to *Blum*, but to other decisions endorsing a percentage of the fund calculation, the Eleventh Circuit also stated: "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id*. (rejecting the use of lodestar analysis for determination of fees in common fund cases); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2008

12

WL 11234103, at *2 (N.D. Ga. Mar. 4, 2008) ("Since 1991, the Eleventh Circuit has required district courts in this circuit to follow the 'percentage of the fund' approach to awarding fees in class action cases.").

"[T]he amount of any fee must be determined upon the facts of each case." *Id*. To make this determination, "the *Johnson* factors [may be] appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I Condo. Ass'n, Inc*., 946 F.2 at 775. The *Johnson* factors are: the amount involved and the results obtained; the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Johnson*, 488 F.2d at 717-19.

### 1.  *Class Counsel obtained a favorable result*

"The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 351; *see also Mashburn*, 684 F. Supp. at 693 ("The critical element in determining

the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."); *accord Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major factor to consider in making a fee award.").

Here, Class Counsel obtained an excellent result for the Class Members that exceeds comparable figures in other approved TCPA class action settlements. *See, e.g.*, *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) ($20-$40 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, ECF No. 44 (S.D. Fla. Nov. 1, 2019) (less than $9 per claimant); *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, ECF No. 86 (S.D. Fla. Jan. 16, 2020) ($10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claimant).

Indeed, the Settlement provides Class Members with real monetary relief. Accordingly, the Settlement represents an objectively favorable recovery for the Class Members.

### *2. The time and labor required to resolve this matter were extensive*

As outlined in the declaration of Manuel S. Hiraldo, Class Counsel spent considerable time and labor to reach the Settlement. *See* Declaration of Manuel S. Hiraldo, attached as **Exhibit 2**, ¶7. Those efforts included:

a.  Conferences with Plaintiff to prepare and file lawsuit;

b.  Continued communications with Plaintiff throughout development of the litigation;

c.  Issuing written discovery to Defendant;

d.  Issuing subpoenas for documents to Defendant's vendors;

e.  Three (3) corporate representative depositions of Defendant;

f.  Multiple conferrals with Defendant's counsel to negotiate production of class discovery;

g.  Multiple conferrals with counsel for Defendant's vendors to negotiate production of class discovery;

h.  Seeking to compel production of discovery from Defendant, which consisted of motion practice and hearings before Magistrate Judge Cannon, *see* [DEs 19, 26, 29];

i.  Attending hearing on show cause order, which was converted to settlement conference and resulted in settlement of the case;

j.  Post-settlement discovery efforts, including issuing subpoenas to Defendant's various vendors, and negotiating production of documents from said vendors over the course of several months;

k.  Coordinating and working with Plaintiff's expert to analyze voluminous class data produced by Defendant's outside vendors;

l.  Preparing class notice documents;

m. Coordinating with settlement administrator to disseminate notice to the identified Class Members;

n.  Preparing motions for preliminary and final approval.

*Id*.

Additional work remains to be done, including working with Simpluris to administer the settlement, and obtaining final approval of the Settlement.

### 3. *The questions underlying this matter were both difficult and novel*

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD*

*Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

Here, Defendant presented a variety of defenses, which gave rise to many legal questions. Indeed, Defendant raised twelve separate affirmative defenses to Plaintiff's claims by way of its answer alone. [DE 6] at 12-15. Moreover, at the time the settlement was reached, Defendant had taken the position that it had no control or possession of any discovery to identify the alleged statutory violations or the Class Members. Locating and extracting this information from Defendant's vendors because the primary focus of the case, and the proposed Settlement was only obtained because of Class Counsel's diligence in tracking down the information.

### 4. Class Counsel relied on years of experience in performing the legal services required

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall & Insulation*, 2012 WL 12540344, at \*4; *see also Swift v. BancorpSouth Bank*, No. 1:10-CV-00090-GRJ, 2016 WL 11529613, at \*17 (N.D. Fla. July 15, 2016) (same); *In re Omnivision Techs., Inc. Sec. Litig.*, No. 5:11CV-05235-RMW, 2015 WL 3542413, at \*2 (N.D. Cal. June 5, 2015) (same); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010) (same). Here, Class Counsel relied on years of experience in litigating Plaintiff's and the Class Members' claims, and negotiating and securing the Settlement. *See* Hiraldo Decl., [DE 40-3], ¶9.

### 5. *Acceptance of this matter precluded Class Counsel from taking on other employment*

"[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *2; *see also Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) ("Class Counsel's law firms are small enough that the choice to take one case over another affects the firm's ability to accept other paying work, and the work involved in this case was extensive."); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *21 (S.D. Tex. Jan. 23, 2015) ("By accepting this case, class counsel necessarily limited their ability to work on other cases. Four of Cohen Milstein's seven-lawyer Employee Benefits Practice Group spent more than 50 hours on this case."); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time."); *Johannssen v. Dist. No. 1*, No. AMD 96-2355, 2001 WL 770987, at *4 (D. Md. July 10, 2001), *aff'd in part, remanded in part sub nom. Johannssen v. Dist. No. 1-Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159 (4th Cir. 2002) ("The extensive time spent on this case could certainly have been spent handling other cases; thus,

involvement in this litigation carried with it significant opportunity costs.").

Class Counsel's firms are small, with just one partner at each firm. The amount of work that Class Counsel can handle at any given time is accordingly limited. As such, Class Counsel accrued opportunity costs as a result of litigating this matter.

### 6. *A customary fee in a common fund case is approximately one-third of the economic benefit bestowed on the class*

Class Counsel's request for an award of attorneys' fees in an amount of one-third of the common fund is well within the range of attorneys' fee awards affirmed by the Eleventh Circuit and approved by district courts within it. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of 33 1/3% of a $40 million settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion settlement fund); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement fund of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement fund of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement fund of $77.5 million). This analysis does not differ when limited to TCPA class actions. *See, e.g.*, *Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-CV-

25-RSB-CLR, 2025 WL 502089, at *3 (S.D. Ga. Feb. 13, 2025) ("The Court awards one-third of the Settlement Fund for Attorneys' Fees[.]"); *Soto v. The Gallup Org.*, No. 13-cv-61747, ECF No. 95 (S.D. Fla. Nov. 24, 2015) (awarding a fee of 33 1/3%, inclusive of costs); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, ECF No. 95 (S.D. Fla. June 24, 2015) (awarding a fee of 33 1/3%, plus costs).

### 7.  *Class Counsel litigated this matter on a contingent basis*

Class Counsel's "contingent fee risk is an important factor in determining the fee award." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *3 (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992)). In part, this is because even in ordinary cases "uncertain is the outcome," *id.*, and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Id.*; *see also Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ("A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.").

Plaintiff entered into a contingent attorneys' fee agreement with Class

Counsel. *See* **Exhibit 2**, ¶5. The agreement permitted Class Counsel to apply to this Court for an award of attorneys' fees in the event that a common fund was established for the benefit of a class. The agreement also stated that Class Counsel would seek a percentage of the common fund created as compensation for work performed in connection with this matter.

Thus, that the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1215 ("This factor weighs heavily in favor of a 31 and 1/3% percentage fee for Class Counsel because the fee in this action has been completely contingent."); *accord Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

### 8. *This matter was undesirable to many attorneys*

Class Counsel worked without payment for nearly a year-and-a-half making this case undesirable to many. *See Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *4 (explaining that the prospect of expending significant time and money with no assurance of payment, to litigate a case against well-represented

defendants, would deter many lawyers from assuming representation). Even though Class Counsel ultimately obtained a favorable settlement, the road leading to a resolution was paved with large quantities of time and money that would deter many attorneys from accepting this matter.

### 9. *Additional factors support Class Counsel's request for an award of attorneys' fees*

"Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217. This is particularly important here, where, as previously noted, damages awards under the TCPA and FTSA are often too small to incentivize individual actions. And given such a circumstance, "courts treat successfully fulfilling [the private attorney general role] as a . . . factor when awarding class counsel attorneys' fees." *Id.* (citing *Ressler*, 149 F.R.D. at 657 (noting that when class counsel act as private attorneys general, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions")).

Accordingly, a significant contingent attorneys' fee award is appropriate where "absent an award of [such fees] . . . the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self-interest rather than obtaining real justice on behalf of their

22

injured clients." *Id*. at 1217-18 (citing John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, Maryland Law Review, 216, 225-26 (1983) (the private attorney general provides an important mechanism "to enforce the federal antitrust and securities laws, to challenge corporate self-dealing in derivative actions, and to protect a host of other statutory policies," but in the absence of appropriate incentive structures, "litigated judgments are few, cheap settlements are common, and . . . the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement")).

### E. Class Counsel is entitled to reimbursement of $6,952.90 in costs and litigation expenses

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019), *appeal dismissed sub nom. Carlin v. Spooner*, 808 F. App'x 571 (9th Cir. 2020); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."). And "[t]he prevailing view is that expenses are awarded in addition to the fee percentage." *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 WL 2579201, at *4 (M.D.N.C. June 24, 2019).

"Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and computerized legal research." *Id.*; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *accord* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.") (emphasis added).

Class Counsel requests the reimbursement of $6,952.90 in costs and litigation expenses necessarily incurred to resolve this matter on behalf of Settlement Class members. These expenses include filing fees, process server fees, deposition court reporter and transcript costs, expert fees, travel and lodging expenses, meal expenses associated with case-related travel, and mediation fees. *See* **Exhibit 2**, ¶8. Because Class Counsel's costs and litigation expenses are eminently reasonable in a class action like this, and were necessary to the successful resolution of this action, *see Carlin*, 380 F. Supp. 3d at 1024, Class Counsel request that this Court approve their reimbursement.

24

### F.  Plaintiff is Entitled to a Service Award Under her FTSA Claim

Pursuant to *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), Plaintiff is not entitled to a service award with respect to her federal TCPA claim. However, as courts have since held, where a plaintiff is asserting a Florida state law claim (e.g., an FTSA claim) in federal court, state law principles apply and a service award is permitted in connection with the state claim because Florida law permits incentive awards. *See William S. v. Progressive Select Ins. Co.*, No. 19-21760-CIV-DIMITROULEAS, 2023 U.S. Dist. LEXIS 58227, at *14  (S.D. Fla. Mar. 31, 2023) ("The Court also finds that Class Counsel's request for Service Awards to be paid to the Class Representatives is distinguishable from the type of service award prohibited by *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), and thus finds that it is appropriate, and the amount requested is reasonable. As this Court previously explained, state law governs the issue of Service Awards in this diversity action…. Here, Florida law permits providing Service Awards to class representatives.")(citing *Roth v. Geico Gen. Ins. Co.*, No. 16-cv-62942WPD, 2021 U.S. Dist. LEXIS 23105, at *37 (S.D. Fla. Feb. 8, 2021); *Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. 3d DCA 2009)); *Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1101 (M.D. Fla. 2023) ("Plaintiff is Entitled to a Service Award Under Florida Law")(citing *Junior v. Infinity Ins. Co.*, Case No. 6:18-cv-1598-WWB-EJK (M.D. Fla.)).

Here, pursuant to the above cited authority, Plaintiff is permitted to recover an incentive award based on her FTSA claim. Moreover, Plaintiff's requested service award of $7,500 is well within the range of similar awards in similar cases. *See Medina v. Enhanced Recovery Co., Ltd. Liab. Co.,* No. 15-14342-CIV-MARTINEZ-MAYNARD, 2019 U.S. Dist. LEXIS 155688, at *8 (S.D. Fla. Sep. 11, 2019) ("The Class Representatives, as identified in the Preliminary Approval Order, are each hereby each granted an Incentive Award in the amount of $7,500 for their respective efforts in this case on behalf, and for the benefit, of the Settlement Class."); *McLean v. Osborn*, No. 18-cv-81222-DMM, 2019 U.S. Dist. LEXIS 212923 (S.D. Fla. Dec. 6, 2019); *Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW, 2018 U.S. Dist. LEXIS 122098, at *11 (S.D. Fla. July 20, 2018) ("The Court awards an Incentive Payment in the amount of $7,500 to Plaintiff Desiree Marengo payable pursuant to the terms of the Settlement Agreement.").

## IV.    CONCLUSION

Plaintiff respectfully requests that this Court finally approve the settlement and enter a final judgment in the form submitted concurrently.

Dated: September 25, 2025

Respectfully submitted,

**HIRALDO P.A.**                    **EISENBAND LAW, P.A.**

*/s/ Manuel S. Hiraldo*              */s/Michael Eisenband*
Manuel S. Hiraldo, Esq.             515 E. Las Olas Boulevard, Suite 120
Florida Bar No. 030380              Ft. Lauderdale, Florida 33301
401 E. Las Olas Boulevard           Michael Eisenband
Suite 1400                          Florida Bar No. 94235
Ft. Lauderdale, Florida 33301       Email:
Email: mhiraldo@hiraldolaw.com      MEisenband@Eisenbandlaw.com
Telephone: 954.400.4713             Telephone: 954.533.4092
*Counsel for Plaintiff and the Class*   *Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Local Rule 7.1(B), the undersigned counsel conferred in writing with counsel for Defendant and received a written response from Defendant's counsel stating that Defendant does <u>not</u> oppose the instant Motion.

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

Pursuant to Local Rule 7.1(F), undersigned counsel certifies that this Motion, excluding the case style, signature block, and certificate of service, contains 5,995 words as calculated by a word-processing system and complies with the word limit set forth in such rule.


<u>*/s/ Manuel S. Hiraldo*</u>
Manuel S. Hiraldo, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  September 25, 2025, I electronically filed the foregoing document with the clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.